PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRANDON BROWN, | ) | CASE NO. 4:24-CV-1465 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| MAHONING COUNTY SHERIFF'S | ) | **MEMORANDUM OF** |
| OFFICE *et al.*, | ) | **OPINION AND ORDER** |
| | ) | [Resolving ECF No. 31] |
| Defendants. | ) | |

The Court considers Defendants' Motion for Summary Judgment under Federal Rule of Civil Procedure 56.  See ECF No. 31.  Plaintiff Brandon Brown accuses the Mahoning County Board of Commissioners, the Mahoning County Sheriff's Department, and Deputy Mathew Bueno[1] of violating his Fourth, Eighth, and Fourteenth Amendment rights during a brief detention at the Mahoning County Justice Center ("MCJC") in 2023.  See U.S. Const. amends. IV, VIII, XIV.  For the reasons herein, the Court finds no genuine dispute of material fact by which a reasonable jury could rule in Plaintiff's favor.  Defendants are therefore entitled to judgment as a matter of law, and the Motion is granted.

---

[1] In a Motion for Leave to Amend *Instanter*, Plaintiff confirmed that "[t]]he basic gist of this motion is to withdraw claims other than those concerning Defendant Matt Bueno."  ECF No. 25 at PageID #: 134.

(4:24-CV-1465)

# I.

## A.[2]

Near midnight on August 29, 2023, officers from the Youngstown Police Department pulled Plaintiff over.  See ECF No. 25–1 at Page ID ##: 138–39, ¶ 5.  Their computer database revealed he had an arrest warrant out of Mahoning County.  See ECF No. 31–1 at PageID #: 183, ¶ 1.  Plaintiff disputed the warrant, claiming it was clerical error from a "bogus" child support case.  See ECF No. 25–1 at Page ID #: 139, ¶ 6.  The officers arrested Plaintiff and drove him to MCJC for detention.  He was booked there at 3:00 AM the next day, August 30, 2023.  See ECF No. 31–1 at PageID #: 183, ¶¶ 2–4.  During the booking process, deputies confiscated $1,495.00 in cash from Plaintiff.  See ECF No. 31–1 at PageID #: 188, ¶ 44.  He expressed suicidal ideations and was placed on suicide watch consistent with MCJC policy.  See ECF No. 31–1 at PageID ##: 183–84, ¶¶ 4–5, Corrections Division Policies and Procedures, Ex. A at PageID ##: 189–93.

Deputies set Plaintiff in a one-man holding cell at 3:18 AM, offered him a blanket, and ordered him to change out of his orange jail garb and into a green suicide prevention smock.  See ECF No. 31–1 at PageID #: 184, ¶¶ 8–9.  He refused to disrobe and removed only his shirt.  See ECF No. 31–1 at PageID ##: 184–85, ¶¶ 11–22.  After thirty minutes of repeated requests, Deputies entered the cell at 3:44 AM, handcuffed Plaintiff, and attempted to remove his trousers and shoes.  See ECF No. 31–1 at PageID ##: 185–86, ¶¶ 20–26.  Again, he declined to cooperate, refusing to unclothe or lift his feet to ease the unclothing process.  See ECF No. 31–1 at PageID

---

[2] As it must on summary judgment, the Court construes these facts in the light most favorable to Plaintiff.  See Scott v. Harris, 550 U.S. 372, 378 (2007).

(4:24-CV-1465)

#: 186, ¶¶ 24–26. At 3:46 AM, Defendant Bueno and other officers guided Plaintiff to the ground using a "balance displacement technique" that allowed them remove Plaintiff's pants and shoes. See ECF No. 31–1 at PageID #: 27. The deputies exited the cell, leaving Plaintiff naked by his own choice, as he could have donned the green suicide smock at any time. See ECF No. 31–1 at PageID #: 186, ¶ 28.

Over the next hour, Plaintiff refused to allow the deputies to remove his handcuffs, but consented to uncuffing at 4:55 AM. ECF No. 31–1 at PageID ##: 186–87, ¶¶ 30–36. Around the same time, MCJC custodians entered and cleaned Plaintiff's cell for approximately 1.5 hours. ECF No. 31–1 at PageID #: 187, ¶¶ 34–35. An MCJC staff nurse checked on Plaintiff twice between 4:13 AM and 5:04 AM and gave him medication. See ECF No. 31–1 at PageID #: 187, ¶¶ 32, 38. Plaintiff continued to refuse to don the green suicide smock and remained naked. ECF No. 31–1 at PageID #: 187, ¶¶ 37, 39. At 11:26 AM, a deputy told Plaintiff he was set for release because his arrest warrant was rescinded. See ECF No. 31–1 at PageID #: 187, ¶ 40. At 11:39 AM, he was released from MCJC and taken to St. Elizabeth's Hospital in Youngstown for self-harm monitoring. See ECF No. 31–1 at PageID ##: 187–88, ¶¶ 41. He was released after approximately eight hours at MCJC and five hours at St. Elizabeth's.

**B.**

Plaintiff sued the Mahoning County Board of Commissioners, the Mahoning County Sheriff's Office, and Deputy Bueno in state court on August 5, 2024. See ECF No. 1 at PageID #: 5. Defendants removed the case to the Northern District of Ohio. See ECF No. 1 at PageID #: 1. After discovery and amended pleadings, Plaintiff filed *instanter* his fifth amended

3

(4:24-CV-1465)

complaint—now operative—with leave of Court.[3]  See ECF Nos. 25, 30.  He alleges Defendant Bueno violated his civil rights under 42 U.S.C. § 1983 through unlawful arrest and excessive force in violation of the Fourth Amendment, cruel and unusual punishment in violation of the Eighth Amendment, and a deprivation of due process in violation of the Fourteenth Amendment. See ECF No. 25–1 at PageID ##: 140–412, ¶¶ 20–25; U.S. Const.. amends. IV, VIII, XIV. Defendants timely answered and now move for summary judgment.  See ECF Nos. 31, 32.  The Motion is fully briefed.[4]  See ECF No. 33, 34.

## II.

### A.

Summary judgment is a civil resolution entered by a district court for one party against another on some or all claims without a full trial.  See Fed. R. Civ. P. 56.  It is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it will affect the outcome of the litigation.  See Scott v. Harris, 550 U.S. 372, 380 (2007).  A dispute is genuine if the evidence would permit a reasonable jury to rule in the non-moving party's favor.  See id.  The moving party bears the initial burden of proving the absence of a genuine dispute of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving

---

[3] Titled the fourth amended complaint, but in reality, the fifth.  See ECF Nos. 1, 9, 11, 23, 25.

[4] Plaintiff's response in opposition violates multiple Local Rules of Civil Procedure. First, his memorandum failed to include a statement certifying the track assigned.  See Local Rule 7.1(f).  Second, his memorandum failed to include a statement certifying that it adheres to the Court's page limitations.  See id.  Third, as his memorandum exceeds fifteen pages, he failed to include a table of contents, table of authorities, issue statement, and argument summary.  See id.

(4:24-CV-1465)

party to present specific, admissible evidence that a genuine issue exists for trial. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When weighing a motion for summary judgment, a district court views all evidence and draws all reasonable inferences in the light most favorable to the non-moving party. See *Halasz v. Cass City Pub. Schools*, 162 F.4th 724 (6th Cir. 2025).

### B.

Section 1983 of the Enforcement Act of 1871 authorizes civil suits for monetary and injunctive relief against state actors who deprive rights guaranteed by the United States Constitution or federal law. See 42 U.S.C. § 1983. The statute "does not confer substantive rights; rather, it is only a means to vindicate rights already conferred[.]" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *see* 42 U.S.C. § 1983. To succeed on a 42 U.S.C. § 1983 claim, a plaintiff must (1) identify a constitutional right and (2) show that a person acting under color of state law deprived him of that right. See *West v. Atkins*, 487 U.S. 42, 48 (1988); *Miller v. Sanilac Cnty.*, 606 F.3d 240, 247 (6th Cir. 2010)

Under the Fourth Amendment, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const.. amend. IV. The Fourth Amendment's prohibition of unreasonable seizures "bars excessive force against free citizens[.]" *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013) (citing *Graham*, 490 U.S. at 393–94). Under the Eighth Amendment, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment's prohibition of cruel and unusual punishment bars excessive force against incarcerated persons. See *Whitley v. Albers,* 475 U.S. 312, 318–22 (1986). Under the Fourteenth Amendment, "[n]o state shall . . . deprive any person of life,

5

(4:24-CV-1465)

liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. "When a citizen does not fall clearly within either [free citizen or incarcerated person]—*e.g.*, pretrial detainees—the Fourteenth Amendment's more generally applicable Due Process Clause governs to bar a governmental official's excessive use of force." Burgess, 735 F.3d at 472 (citing Lanman v. Hinson, 529 F.3d 673, 680–81 (6th Cir. 2008)).

As explained by the United States Court of Appeals for the Sixth Circuit,

> [f]or claims concerning injuries sustained while in police custody, there is sometimes a dispute over whether the Fourth or Fourteenth Amendment governs the constitutionality of the officer's conduct. After all, the point at which the Fourth Amendment's prohibition against unreasonable seizures ends and the Fourteenth Amendment's substantive due process right begins is not always obvious. For instance, in *Aldini*, we held that when a person in custody asserts an excessive force claim against an officer, a judicial determination of probable cause is the "dividing line" between application of the two amendments. Under the *Aldini* paradigm, the Fourth Amendment governs an excessive force claim brought by an "arrestee"—one who has been arrested but has not yet received a judicial determination of probable cause, either through an arrest warrant or a post-arrest probable cause hearing. The Fourteenth Amendment, on the other hand, provides the same protection for a "pretrial detainee"—a person who has received a judicial determination of probable cause but has not yet been adjudicated guilty of a crime.

Colson v. City of Alcoa, Tennessee, 37 F.4th 1182, 1187 (6th Cir. 2022) (citing Aldini v. Johnson, 609 F.3d 858, 865–66 (6th Cir. 2010), Graham, 490 U.S. at 394, and Bell v. Wolfish, 441 U.S. 520, 535–36 (1979)) (cleaned up).

6

(4:24-CV-1465)

### III. [5]

#### A.

Once probable cause supports a seizure, the Fourteenth Amendment governs an excessive force claim from a pretrial detainee. See Colson, 37 F.4th at 1188. Regardless of the constitutional headwater, the operative standard is the same: objective reasonableness—*i.e.*, whether the officer acted reasonably under the circumstances—with built-in deference for on-the-spot judgments. See Lombardo v. City of St. Louis, Missouri, 594 U.S. 464, 466 (2021); Burchett v. Kiefer, 310 F.3d 937, 944 (6th Cir. 2002) (citing Graham, 490 U.S. at 396). To survive summary judgment, a plaintiff must show that more than *de minimis* force was used. See Leary v. Livingston Cnty., 528 F.3d 438, 443 (6th Cir. 2008) (citing Hudson v. McMillian, 503 U.S. 1, 9–10 (1992). Excessive force claims are assessed through five non-exhaustive factors: (1) the relationship between need and force used; (2) the extent of injury; (3) efforts to temper the force; (4) the threat reasonably perceived; and (5) plaintiff's resistance. See Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015).

Plaintiff alleges that "Defendant Bueno, acting under color of state law, violated [his] Fourth Amendment rights under the United States Constitution by employing excessive force against him and/or inflicting on him harmful and/or offensive contact without justification." ECF No. 25–1 at PageID #: 140, ¶ 20. Defendants argue that Plaintiff repeatedly refused lawful

---

[5] Plaintiff names the Mahoning County Board of Commissioners and the Mahoning County Sheriff's Office as Defendants, but nowhere in his operative complaint or his response to the instant Motion does he argue that an unconstitutional municipal policy or custom was the moving force behind any alleged deprivation. Because Plaintiff has not raised *Monell* liability, the Court declines to address it. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

(4:24-CV-1465)

commands at MCJC and that any force used was minimal, reasonable, and constitutionally permissible. See ECF No. 31 at Page ID ##: 170–80. Plaintiff counters that "[u]nder *Kingsley*'s objective standard . . . no reasonable officer could think a naked detainee . . . posed a threat warranting a knee-strike and takedown." ECF No. 33 at PageID #: 430. Defendants riposte that Plaintiff failed to show a constitutional violation occurred, failed to show a clearly established constitutional right, and misrepresented evidence in the record. See ECF No. 34 at Page ID ##: 442–55.

The force used was objectively reasonable under all five *Kingsley* factors. Plaintiff self-reported suicidal ideation at booking. See Brown Dep. Tr., ECF No. 31–4 at PageID #: 221:13–17. MCJC policy requires removal of all clothing and personal property from inmates on suicide watch and issuance of a green suicide prevention smock. See Mahoning County Sheriff's Office Policies and Procedures, ECF No. 31–3 at PageID #: 201. Plaintiff concededly refused every verbal command and declined to assist officers in removing his clothing. See Brown Dep. Tr., ECF No. 31–4 at PageID #: 319:12–321:5, 321:6–8. They made multiple separate verbal requests before any physical contact, escalated only after Plaintiff pulled away from an initial guiding gesture, and terminated force the moment resistance ceased — a graduated approach supporting objective reasonableness. The resulting brief controlled takedown was a *de minimis* use of force, caused no verifiable injury, required no follow-up care, and necessitated "no documented medical treatment." Brown Dep. Tr., ECF No. 31–4 at PageID #: 253:8–11; *see* Morrison v. Bd. of Trustees of Green Twp., 583 F.3d 394, 407 (6th Cir. 2009). Plaintiff's active physical resistance is undisputed, and the threat that an acutely suicidal detainee would retain the means to harm himself was both documented and immediate. No reasonable jury could find the

8

(4:24-CV-1465)

force objectively unreasonable. Defendants acted only to protect Plaintiff from himself, and thus summary judgment is granted on the excessive force claim.

**B.**

"A false arrest claim under [42 U.S.C. § 1983] requires a plaintiff to prove that the arresting officer lacked probable cause to arrest [them]." *Voyticky v. Village of Timberlake, Ohio,* 412 F.3d 669, 677 (6th Cir. 2005); *see also Brooks v. Rothe,* 577 F.3d 701, 706 (6th Cir. 2009). That is, a plaintiff must prove by a preponderance of the evidence that, to procure the warrant, the government knowingly and deliberately (or with a reckless disregard for the truth) made false statements or omissions that were material to the finding of probable cause. *See Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (citing *Wilson v. Russo,* 212 F.3d 781, 786–87 (3d Cir. 2000) (cleaned up). An arrest executed under a facially valid warrant is a complete defense to an unlawful arrest claim. *See Voyticky,* 412 F.3d at 677.

The operative complaint shallowly pleads an unlawful arrest claim. *See* ECF No. 25–1 at PageID #: 140, ¶¶ 20–21. Plaintiff alleges only that "[t]his action arises out of a series of events that began with Plaintiff's wrongful arrest based on a clerical error." ECF No. 25–1 at PageID #: 138. He offers no legal or factual support for this claim. Defendants argue that Plaintiff cannot pursue this cause of action because Plaintiff admits there was a valid warrant, that Youngstown Police—not Defendants—arrested him, and that he was immediately released once the jail learned the warrant had been rescinded. Plaintiff attempts to revive that contention in his response to the instant Motion by claiming, with zero evidentiary support, that "[e]veryone involved acknowledges that officers rather hauled [Plaintiff] to jail on a void warrant[.]" ECF No. 33 at PageID #: 422. He pushes the rhetorical boundary later in the same filing by

9

(4:24-CV-1465)

contending—again, without credible evidence—that "[Plaintiff] underwent arrest . . . for a non-violent bogus child support warrant." ECF No. 33 at PageID #: 438.

Defendants have the truth of it. It is uncontested Plaintiff was arrested on a facially valid warrant. Even if the arrest was unlawful, it was executed by the Youngstown Police Department, not Defendants. The existence of a valid, outstanding arrest warrant in a police database provided probable cause for Plaintiff's arrest. Plaintiff's subjective belief that the warrant was erroneous is immaterial. The arresting officers were entitled to rely on the warrant's facial validity. Defendants have satisfied their burden of showing there is no genuine dispute of material fact as to whether Plaintiff was detained without probable cause. A reasonable jury could not conclude that this arrest violated Plaintiff's constitutional rights.

### C.

The Eighth Amendment—which prohibits unnecessary and wanton punishment and applies to the states through the Fourteenth Amendment, *see Robinson v. California*, 370 U.S. 660, 666–67 (1962)—protects only convicted prisoners, not pretrial detainees. *See Bell v. Wolfish*, 441 U.S. 520, 545 (1979). Pretrial detainees receive equivalent protection through the Fourteenth Amendment's Due Process Clause, *see Johnson v. Sootsman*, 79 F.4th 608 (6th Cir. 2023), and the Sixth Circuit applies the Eighth Amendment standard to such claims "for the sake of simplicity[.]" *Spencer v. Bouchard*, 449 F.3d 721, 727 (6th Cir. 2006). To succeed, a plaintiff must satisfy both an objective component — that the alleged conduct was sufficiently serious, *see Farmer v. Brennan*, 511 U.S. 825, 834 (1994) — and a subjective component — that the defendant acted with deliberate indifference, meaning conscious disregard of a substantial risk of serious harm. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

(4:24-CV-1465)

Because Plaintiff was a pretrial detainee who had not been convicted of an offense, his claim is governed by the Fourteenth Amendment's Due Process Clause, not the Eighth Amendment's prohibition on cruel and unusual punishment. Plaintiff has not pled a Fourteenth Amendment conditions-of-confinement claim, has not identified the legal standard governing such a claim, and has not adduced evidence in support of his contentions. His Eighth Amendment claim therefore fails at the threshold. *Arguendo*, he offers no factual or legal support for this cause of action irrespective of its constitutional underpinning.[6] He also abandoned that claim in his response to the instant Motion. The Sixth Circuit's jurisprudence on abandonment of claims is clear: "a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (citing *Hicks v. Concorde Career Coll.*, 449 Fed.Appx. 484, 487 (6th Cir. 2011) (noting the district court properly declined to consider the merits of a claim when the plaintiff failed to address it in a response to a motion for summary judgment).

**D.**

The Fourteenth Amendment's Due Process Clause secures rights procedurally and substantively. It "bars certain government actions regardless of the fairness of the procedure used to implement them." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (cleaned up). To succeed on a substantive due process claim under 42 U.S.C. § 1983, a plaintiff must show that (1) they were deprived of a constitutionally protected interest, and (2) "the government's

---

[6] Plaintiff says that "[Defendant] Bueno's actions during the takedown remain central to the constitutional claim[s]." ECF No. 33 at PageID #: 426. He is half-right—they are not just central; they are singular.

11

(4:24-CV-1465)

discretionary conduct that deprived that interest was constitutionally repugnant." *Halasz v. Cass City Pub. Schools*, 162 F.4th 724, 736 (6th Cir. 2025) (quoting *Guertin v. Michigan*, 912 F.3d 907, 922 (6th Cir. 2019)). "There are various contexts in which courts have found that substantive due process is violated—including that the action was willful and unreasoning, shocks the conscience, was extremely irrational, or lacks some factual basis." *Johnson v. City of Saginaw*, 980 F.3d 497, 513 (6th Cir. 2020) (cleaned up).

Measured against that demanding threshold, Plaintiff's Due Process claim fails. The conduct at issue—officers' efforts to secure compliance during a suicide-watch clothing exchange—was neither arbitrary nor conscience-shocking. The officers acted in response to a legitimate and immediate safety concern: Plaintiff's refusal to relinquish items that could be used for self-harm. Their actions were tied to an identified institutional interest in compliance and safety, were preceded by multiple verbal commands, and ceased upon effect. Nothing in the record suggests that Defendants acted maliciously, to cause harm, or in a manner divorced from the safety rationale underlying MCJC suicide-prevention procedures. Even accepting Plaintiff's version of events, this conduct falls far short of the type of brutal, abusive, or irrational behavior that substantive due process forbids. Because Plaintiff has not shown that the officers' actions were constitutionally repugnant under the Fourteenth Amendment's framework, this claim fails as a matter of law.[7]

**E.**

---

[7] Likewise, Plaintiff's allegation that his funds were unlawfully seized is without merit. He was booked into MCJC with $1,495 and received the full amount upon release. *See* ECF No. 31–1 at PageID #: 188, ¶¶ 44–45. Custodial safekeeping of an inmate's funds pursuant to a valid arrest warrant is not a due process violation. *See Sickles v. Campbell Cty.*, 501 F.3d 726, 730 (6th Cir. 2007).

(4:24-CV-1465)

Civil battery is the intentional infliction of harmful or offensive physical contact with another person without their consent. *See* Restatement (Third) of Torts: Intentional Torts to Persons § 101 (Am. Law Inst. 2015). To succeed on a battery claim under Ohio law, a plaintiff must show that (1) the defendant acted with an intent to cause harmful or offensive contact and (2) such contact occurred. *See, e.g.*, *Kouider on behalf of Y.C. v. Parma City Sch. Dist. Bd. of Educ.*, 480 F. Supp. 3d 772, 791 (N.D. Ohio 2020). It does not require "force capable of causing physical pain or injury." *Stokeling v. United States*, 586 U.S. 73, 83 (2019).

Plaintiff's battery claim fails. The undisputed record shows that officers used physical contact only after Plaintiff refused multiple directives to remove clothing that posed a suicide risk and physically pulled away from Defendants' attempt to guide him to the floor. The contact consisted of a hold and a brief, controlled, "hip displacement" takedown to a padded floor—force calibrated to secure compliance and to prevent Plaintiff from retaining items that could be used for self-harm. Because the officers acted within the scope of their duties in response to an immediate safety concern and used no more force than reasonably necessary under the circumstances, their conduct was privileged as a matter of law. A privileged use of force cannot constitute battery, and no reasonable jury could conclude otherwise on this record. Plaintiff's battery claim thus fails under Ohio's political subdivision tort liability statute. *See* Ohio Rev. Code § 2744.02. Law enforcement officers performing a governmental function are immune from intentional tort claims absent a showing of malicious purpose, bad faith, or wanton and reckless conduct. *See* Ohio Rev. Code § 2744.03(A)(6)(b). The record supports none of those findings here.

**F.**

13

(4:24-CV-1465)

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." See *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  It functions not as an affirmative defense, but "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  District courts assess qualified immunity under a two-step framework.  See *Pearson*, 555 U.S. at 232.  First, they ask whether the alleged facts make out a constitutional violation.  See *id.*  Second, they ask whether the right at issue was clearly established at the time of the conduct.  See *id.*  Although they may address the two prongs in either order, *see id.* at 236, the doctrine of qualified immunity ultimately protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  If the law did not clearly put the defendant on notice that their conduct was unlawful, summary judgment under qualified immunity is appropriate.  See *id.*

Defendants are protected from liability under 42 U.S.C. § 1983.  Plaintiff has not shown that a constitutional violation occurred. Even if he had, no clearly established precedent would have put Defendants on notice that measured force under the circumstances was unlawful and constitutionally repugnant.  Plaintiff's state law battery claim fails for the same reasons, as Ohio law immunizes officers who use reasonable force within the scope of their duties.  See Ohio Rev. Code § 2744.01(C)(1)(h).  Qualified immunity shields Defendants from all claims herein.

## IV.

Defendants' Motion for Summary Judgment is granted under Fed. R. Civ. P. 56 on all causes of action because there is no genuine dispute of material fact by which a reasonable jury

(4:24-CV-1465)

could rule in Plaintiff's favor. *See* ECF No. 31. In the alternative, Defendants are entitled to qualified immunity against all claims. A separate entry of judgment shall issue.

    IT IS SO ORDERED.

| | |
|---|---|
| February 26, 2026 | */s/ Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | United States District Judge |